**Sanderson S. MILLER and Bertha A. Miller, Plaintiff,**

v.

**Carl K. CONNELL, Collector of Revenue, Defendant.**

No. 7797.

United States District Court
W. D. Missouri, W. D.

March 20, 1956.

Reed O. Gentry (of Rogers, Field & Gentry), Kansas City, Mo., attorneys for plaintiff.

Edw. L. Scheufler, U. S. Dist. Atty., Kenneth C. West, Asst. U. S. Dist. Atty., Kansas City, Mo., and Benjamin H. Pester, Atty., Tax Div. of Dept. of Justice, Washington, D. C., for defendant.

WHITTAKER, District Judge.

This action involves plaintiffs' Federal income tax liabilities for the years 1947 and 1948. Claims for refund having been denied, plaintiffs sued the defendant, as Collector of Revenue for the Sixth District of Missouri, to recover claimed overpayment to him of their Federal income tax liabilities for those years.

This action was tried by the Court without a jury on February 2, 1956, and, at the conclusion of the evidence, the parties asked, and were granted, time, within which to submit briefs which have now been filed, and the cause has been submitted for decision.

It appeared from the pleadings, and counsel for plaintiffs admitted at the trial, that the claim for refund respecting the calendar year 1947 was not timely filed, and, hence, plaintiffs cannot recover thereon, and the issues are confined to those involving the calendar year 1948.

Plaintiffs' claim, as set forth in their claim for refund and again in their complaint here, is that the Internal Revenue Service erroneously included in their 1948 return, as ordinary income, their gains in that year upon 513 breeding heifers and cows, held and used by plaintiffs for breeding purposes for a period longer than 6 months, and that, hence, under the terms of Section 117(j), of the Internal Revenue Code of 1939, as supplemented and modified by Section 324 of the Revenue Act of 1951, 26 U.S.C.A. § 117(j), the gains on this breeding herd were capital in character, and the herd having been held for more than six months, they were entitled to long-term capital gains treatment of these gains.

The evidence and the contentions of the parties present two questions, (1) whether these heifers and cows were "held by the taxpayer for * * * breeding. * * * purposes", within the meaning of Section 324 of the Revenue Act of 1951, and (2) whether a sufficiently definite cost or value basis has been established respecting 30 calves "by the side" of cows purchased in 1947, and of 39 calves "by the side" of cows sold in 1948.

The evidence shows that one Roy Harris, engaged in the pasturage business, controlled a great area of blue stem pasturage in Cowley County, Kansas, and that plaintiffs, since the early 40's had pastured many of their cattle with him in that area; that in May of 1947 plaintiffs purchased nearly 1,000 head of Hereford heifers, through a cattle dealer, one Michael Flynn, at Llano, Texas, averaging 470 pounds in weight; that plaintiffs, desiring to establish a breeding herd, sorted out those thought by Mr. Miller to be the best brood stock, consisting of 193 head (and immediately sold the lighter ones of the remainder to A. E. Smith of Tribune, Kansas, and the heavier and fleshier ones of the remainder to Mr. Michael Flynn), and sent these 193 to Harris' pasture near Hoosier, in Cowley County, Kansas, to be there run and operated as a brood herd for the production of a calf crop, and with them he immediately placed a herd of bulls for breeding purposes. They did not prove to be very good breeders as, in the late summer of 1948, only 39 of them had living calves by their sides, and 148 of them were culled out and sold, in August, 1948, 6 had died, and the remaining 39, with calves by their side, were sold to another breeder in September, 1948.

On October 9, 1947 plaintiffs purchased, at San Angelo, Texas, another herd of 320 Hereford cows, and 30 calves by their sides (known as the Neal herd) and shipped them, to another one of Harris' pastures at Grand Summit in Cowley County, Kansas, to be held and used as a brood herd for production of a calf crop, and plaintiffs immediately put bulls with them for breeding purposes. In about 30 days 12 of those cows were culled out as unfit, but the remainder were kept and used as a breeding herd, but again, late in 1948, another and larger group of them were culled out and sold, but the remainder were kept and used as a breeding herd at least through the year 1949 and plaintiffs continued to operate a breeding herd on the Harris pastures for production of a calf crop until late in the year 1951.

There is no contradiction in the evidence that it was the purpose and intention of plaintiffs in acquiring these heifers and cows to hold and use them for breeding purposes for the production of a calf crop, nor is there any contradiction in the evidence that they were in fact so held and used.

The Government argues that there is a legitimate inference to be drawn that the plaintiffs did not in fact intend to use these heifers and cows for breeding purposes for the production of a calf crop because they had no farm and no place to care for a breeding herd, and

that the Harris pastures were without trees or shrubbery except "along streams or sloughs" and were unsuited to a breeding herd of cows, and that plaintiffs merely kept these cows "to obtain the natural increase that would result from running with bulls" and to fatten them on the pasture for gain in weight and better prices. This is not only opposed to the evidence, but is also opposed to the common practice—widely known in this area, even to the Court—which is that many cattle men run herds of brood cows on rented pastures in the Blue Stem area of Kansas for the production of a calf crop and that the area—even though open—is ideal for the purpose. And the notion that cows with suckling calves will gain weight on pasture is entirely erroneous. They do mighty well if they hold their own. And, moreover, it is the inherent purpose of holding cows for breeding purposes "to obtain the natural increase that would result from running with bulls." That is what a breeding herd is kept for.

The remaining, and, on its face, more troublesome, question is whether a sufficiently definite basis of cost or value has been allocated to the 30 calves purchased October 9, 1947, "by the side" of the 320 cows in the Neal herd, and whether a sufficiently definite basis of sale price or value has been allocated to the 39 calves sold September 13, 1948 "by the side" of 39 of the Flynn heifers. Mr. Miller testified that the value of each was $25. Mr. Chandler, plaintiffs' accountant, testified to and used the value of $20 per head, and there is some evidence from plaintiffs' books that they were carried at $35 per head. Of course, the calves were the "crop", and were not taken into, or made a part of, the breeding herd, and the gain on them would be normal or ordinary income. The more paid for the calves purchased, the less the ordinary income would be, and, in converse, the more received for calves sold, the more the normal or ordinary income would be. At first this uncertainty as to values caused me some trouble because I recognize that it is plaintiffs' burden to establish with reasonable certainty the amount of refund they are entitled to. But the amount involved here is de minimis, for there were nearly as many calves bought as sold "by the side" of the cows. 30 were so bought October 9, 1947 with the Neal herd, and 39 were so sold September 13, 1948, with the remnant of the Flynn herd. So whether the value should be $20 or $25 per head, or even some slightly greater amount would only apply to 9 calves, and hence, the uncertainty as to exactly proper allocation of values is so small as to be insignificant.

I think the plaintiff has established that these Hereford heifers and cows were "live stock * * * held by the taxpayer for * * * breeding * * * purposes", and were, therefore, capital assets subject to depreciation, and, hence, the gains thereon were entitled to capital gains treatment, under Section 117(j) as amended and supplemented by Section 324 of the Revenue Act of 1951, and, these brood animals having been held for more than 6 months, plaintiffs were entitled to long term capital gains treatment of those gains.

I, therefore, make the following:

### Findings of Fact

1. The Court has jurisdiction of the parties and the subject matter of this action.

2. Plaintiffs did not timely file a claim for refund for the claimed overpayment of their Federal income taxes for the year 1947 and cannot recover any claimed overpayment for that calendar year.

3. The defendant, Carl K. Connell, as Collector of Revenue for the Sixth District of Missouri, received payment from plaintiffs of the income taxes involved in this action for the calendar year 1948.

4. On May 19, 1947, plaintiffs purchased 193 Hereford heifers at Llano, Texas, for use as a breeding herd, and they did hold and use them on the Harris pastures at Hoosier in Cowley County, Kansas, for breeding purposes from

the time purchased until the last of them were sold in September, 1948.

5. That the 39 calves sold "by the side" of the remnant 39 of those animals in September, 1949 were, when sold, of the value, and they brought, $20 each.

6. On October 9, 1947, plaintiffs purchased 320 Hereford cows with 30 calves "by the side" at San Angelo, Texas, for use as a breeding herd, and they did hold and use said cows on the Harris pastures at Grand Summit, Cowley County, Kansas, for breeding purposes from the time purchased until finally sold, some in, and some after, the year 1948.

7. That the 30 calves purchased "by the side" of said cows were, when purchased, of the value, and they cost plaintiffs, $20 each.

8. That on October 29, 1947, plaintiffs purchased 15 bulls which were added to their breeding herd.

9. That each of said Hereford heifers and said Hereford cows, and said bulls were acquired and held and used by the taxpayers for breeding purposes and were each so held for more than 6 months.

And upon the foregoing findings of fact, I make the following:

### Conclusions of Law

1. The Court has jurisdiction of the parties and the subject matter of this action.

2. Plaintiffs not having timely filed a claim for refund in respect of the claimed overpayment of their 1947 Federal income taxes are not entitled to recover in respect of that year.

3. The gains realized by the plaintiffs in the calendar year 1948, upon the sale in that year of such of said Hereford heifers and cows as were sold in that year, were from the sale of livestock held by the taxpayers for breeding purposes, which livestock was subject to an allowance for depreciation, and such gains were capital in character and entitled to capital gains treatment, and, inasmuch as said livestock had been held by the tax-

payers for such purposes for a longer period than 6 months, plaintiffs are entitled to long term capital gains treatment of such gains.

4. That the 30 calves purchased by the taxpayers on October 9, 1947 "by the side" of the 320 Neal Hereford cows shall be treated as of the value and cost of $20 each and the 39 calves sold by the taxpayers on September 13, 1948 "by the side" of the remnant of 39 of the Flynn heifers shall be treated as of the value of and as bringing $20 each.

5. A computation of the correct amount of plaintiffs' Federal income tax liabilities for the calendar year 1948, in pursuance of these findings and conclusions, shall be made by the parties, and plaintiffs' counsel shall submit to the Court, all within 15 days from this date, a judgment for entry by the Court in accordance with these findings and conclusions.